IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Wiley Y. Daniel**

Civil Action No.  10-cv-01169-WYD

THOMAS STEPHEN BEAUDET,

     Plaintiff,

v.

MICHAEL J. ASTRUE, Commissioner of Social Security,

     Defendant.

---

## ORDER

---

THIS MATTER is before the Court on review of the Commissioner's decision that denied Plaintiff's claim for disability insurance benefits.  For the reasons stated below, this case is reversed and remanded for further fact finding.

I.    <u>INTRODUCTION AND BACKGROUND</u>

Plaintiff was born in 1946, was 61 years old on his alleged onset of disability date, and was 62 years old when his insured status expired in December 2008. (Transcript ["Tr."] 66, 77.)  Plaintiff has at least a high school education and worked as a newspaper delivery driver, security consultant, security officer, and forest service aide (*Id*. 31, 107, 113.)

In March 2008, Plaintiff filed an application for disability benefits under Title II of the Act, 42 U.S.C. §§ 401-33.  (Tr. 66-70.)  He claimed that he became disabled on January 21, 2008, due to low back symptoms.  Specifically, he alleged back, neck, and hip injuries, as well as degenerative disc disease.  (*Id*. 106).  After Plaintiff's claim was

denied initially (*id.* 33, 52-54), he requested a hearing before an ALJ.  (*Id.* 57-58.)

Following a hearing in May 2009 (*id.* 18-32), the ALJ concluded in a decision dated

June 26, 2009, that Plaintiff was not disabled within the meaning of the Act.  (*Id.* 8-17).

In his decision, the ALJ found at step one that Plaintiff last met the insured status

requirements of the Social Security Act on December 31, 2008.  He also found that

Plaintiff did not engage in substantial gainful activity during the period from his alleged

onset date of January 21, 2008, through his date last insured.  (Tr. 13).  At step two, the

ALJ found that Plaintiff had severe impairments of "disorder of cervical and lumbar

spine."  (*Id.*)  At step three, the ALJ determined that Plaintiff did not have an impairment

or combination of impairments that met the Listings.  (*Id.*)

The ALJ determined that Plaintiff's "medically determinable impairments could

reasonably be expected to cause the alleged symptoms; however, [Plaintiff's]

statements concerning the intensity, persistence and limiting effects of these symptoms

are not credible to the extent they are not supported by the evidence of record."  (Tr.

16.)  He also found that Plaintiff retained the residual functional capacity ["RFC"] to

perform the full range of light work.  (*Id.* 14-16.)

At step four, the ALJ found, through the date last insured, that Plaintiff was

capable of performing past relevant work as a security officer.  (Tr. 16.)  Accordingly,

the ALJ found that Plaintiff was not under a disability, as defined in the Social Security

Act, at any time from January 21, 2008, through December 31, 2008, the date last

insured.  (*Id.*)

The Appeals Council granted Plaintiff's request for review, and on April 7, 2010, issued an unfavorable decision, finding that Plaintiff was not disabled. (Tr. 1-6.) It found that Plaintiff's insured status expired on January 21, 2008, and that he had not engaged in substantial gainful activity since that date. (*Id.* 5.) It found the same severe impairments as the ALJ; namely, a disorder of the cervical and lumbar spine. (*Id.*) The Appeals Council also found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the Listings. (*Id.*)

As to RFC, the Appeals Council found, like the ALJ, that Plaintiff had the RFC to perform a full range of light work and that Plaintiff was not precluded from performing his past relevant work as a security worker. (Tr. at 5-6.) On that issue, the Council noted that the inaccuracy of the ALJ's statement that the vocational expert ["VE"] testified that the security worker job did not require the performance of work-related activities precluded by Plaintiff's RFC. (*Id.* 5.) In actuality, the hypothetical to the VE limited Plaintiff to a range of sedentary or less than sedentary work, and the VE said that Plaintiff cannot perform his past relevant work within that category of work. (*Id.*) The Appeals Council decided, however, that since the ALJ actually found a light RFC and the VE testified that the past relevant work of security worker was light, Plaintiff could perform that past relevant work and was thus not disabled. (*Id.* 6). The Appeals Council's decision represents the final decision of the Commissioner for purposes of judicial review. See 20 C.F.R. § 404.981.

Plaintiff argues that the ALJ improperly rejected the opinions of treating physician Dr. George Schwender as well as examining physician Dr. David Richman. He also

contends that the ALJ's RFC determination was not supported by substantial evidence. Finally, Plaintiff asserts that the ALJ's conclusion that Plaintiff could perform his past relevant work is not supported by substantial evidence.

II.    ANALYSIS

    A.    Standard of Review

A Court's review of the determination that a claimant is not disabled is limited to determining whether the Commissioner applied the correct legal standard and whether the decision is supported by substantial evidence.  *Hamilton v. Sec. of Health and Human Servs.*, 961 F.2d 1495, 1497-98 (10th Cir. 1992).  Substantial evidence is evidence a reasonable mind would accept as adequate to support a conclusion.  *Brown v. Sullivan*, 912 F.2d 1194, 1196 (10th Cir. 1990).  "It requires more than a scintilla of evidence but less than a preponderance of the evidence."  *Gossett v. Bowen*, 862 F.2d 802, 804 (10th Cir. 1988).

"Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion."  *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992).  Further, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from substantial evidence."  *Thompson v. Sullivan*,  987 F.2d 1482, 1487 (10th Cir. 1993).

    B.    Whether the ALJ's Decision is Supported by Substantial Evidence

I first address the key medical evidence and then turn to Plaintiff's specific arguments for reversal of the ALJ's decision.  Plaintiff presented at the emergency room in January 2008, two days after injuring his back in a work accident.  (Tr. 150.)  He was

diagnosed with a lumbar strain and prescribed medication.  (*Id.* 151.)  The following

day, Plaintiff began treating with Dr. Schwender, who treated Plaintiff from January 24

,2008, through August 5, 2008.  (*Id.* 22-23, 165-198, 283-316.)  He diagnosed Plaintiff

with an acute lumbar strain and cervical strain.  (*Id.* 194-95.)  Dr. Schwender prescribed

medications for Plaintiff, referred him for diagnostic tests and physical therapy, and

prescribed a cane and a TENS unit.

By report dated August 5, 2008, Dr. Schwender concluded that Plaintiff had

reached maximum medical improvement ["MMI"], assigned him a 49% whole person

impairment, and discharged him from medical care.  (Tr. 283-84.)  He limited Plaintiff to

lifting and carrying five pounds and no pushing/pulling, reaching overhead, crawling,

kneeling, squatting or climbing.  (*Id.* 284.)  He also required that Plaintiff be able to

alternate sitting, standing and walking, as needed, for neck and back comfort.  (*Id.*)

Consultative examiner Dr .Richman evaluated Plaintiff on November 17, 2008.

(Tr. 252-56.)  Dr. Richman assessed Plaintiff with "apparent" left sacroilitis and left-side

myofascial pain.  (*Id.* 255.)  He agreed with Dr. Schwender that Plaintiff had reached

MMI and found that Plaintiff had a combined 50 percent impairment (15 percent due to

preexisting condition, plus 35 percent due to work-related condition).  (*Id.*)  Dr. Richman

further found that Dr. Schwender's work restrictions were generally appropriate, stating

that Plaintiff should work in the sedentary work category and be allowed to alternate

sitting, standing and walking up to 2 or 3 times per hour.  (*Id.* 256.)

The ALJ rejected the above restrictions, instead relying on examiner

Dr. Lawrence Lesnak's Independent Medical Evaluation ["IME"] performed at the

request of Plaintiff's employer in regard to Plaintiff's workers' compensation claim. (Tr. 275-82).  Dr. Lesnak agreed with Dr. Schwender that Plaintiff had reached MMI, but concluded that there was no objective evidence to suggest that Plaintiff qualified for an impairment rating related to his January 2008 work-related accident or that Plaintiff required any work restrictions related to that alleged occupational injury.  (*Id.* 281-82.)

I agree with Plaintiff that the ALJ did not properly weigh the medical evidence and that his decision was thus not supported by substantial evidence.  First, as to treating physician Dr. Schwender, the ALJ did not conduct the required analysis of whether his opinion regarding Plaintiff's work restrictions was entitled to controlling weight.  Indeed, the ALJ did not even reference that Dr. Schwender was a treating physician or refer to the actual work restrictions that he opined to.  Instead, the ALJ referenced only the finding by Dr. Schwender that Plaintiff was at MMI and his assessment of a 49% whole person impairment for Plaintiff.  (Tr. 15.)  He stated as to the 49% rating that "[t]he records do not support such a severe rating and it is not accorded any significant weight."  (*Id.*)

I find that the ALJ's failure to properly weigh Dr. Schwender's actual work restrictions which essentially limited Plaintiff to sedentary work or below and to determine whether Dr. Schwender's opinions were entitled to controlling weight, in and of itself, requires a reversal of the case and remand for further factfinding.  The law is clear that an ALJ is "required to give controlling weight to a treating physician's opinion about the nature and severity of a claimant's impairments, including symptoms, diagnosis and prognosis, and any physical or mental restrictions, if 'it is well supported

by clinical and laboratory diagnostic techniques and if it is not inconsistent with other substantial evidence in the record.'" *Bean v. Chater*, 77 F.3d 1210, 1214 (10th Cir. 1995) (quotation omitted).  The ALJ's failure to properly consider this issue is error which generally requires a remand of the case.  *Robinson v. Barnhart*, 366 F.3d 1078, 1082 (10th Cir. 2004) (citing SSR 96-2p, 1996 WL 374188, at *2).

I note on the controlling weight issue that Dr. Schwender's opinion is supported by clinical findings, including that Plaintiff has "[c]hronic cervical and low back pain with left sacroiliac joint dysfunction, and paresthesias in the left upper and left lower extremities." (Tr. 283.)  He also found decreased range of motion of the cervical and lumbar spine.  (*Id.*)  These findings were also documented in Dr. Schwender's medical records, as well as notations that Plaintiff continues to need a cane, a TENs unit, and medications to keep him at his current MMI status.  (*Id.* 169, 172, 286, 291), Dr. Schwender also found that Plaintiff has tenderness of the neck and back muscles/joints (*id.* 179, 189, 195 296, 311), is in moderate discomfort (*id.* 184, 192), and has guarded gait (*id.* 169, 296.)  Finally, Dr. Schwender noted that the x-rays of Plaintiff's cervical spine on January 24, 2008, "revealed degenerative disc disease at the C5 through C7 levels" and "bilateral neuroforaminal encroachment from spurring that is greatest on the right at C3-C4 and C5-C6, and on the left at C5-C6." (*Id.* 189.)  X-rays of the lumbar spine revealed, among other things,"severe degenerative changes of the facets, and moderate to severe degenerative change at the disc at the L2-L3 levels." (*Id.*)

A medical doctor's statements about a claimant's condition or impairments "are specific medical findings".  *Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994).

The ALJ errs, as here, in rejecting those opinions in the absence of conflicting evidence. *Id.* (finding error with the ALJ's decision to reject the opinions of treating physicians because of the lack of "results or diagnostic tests of medical findings which led them to their conclusion" since the finding that Plaintiff's condition deteriorates under stress is a specific medical finding).

Further, Dr. Schwender's medical findings do not appear to be inconsistent with other substantial evidence in the record. Indeed, his findings are validated by the detailed consultative opinion of Dr. Richman. (Tr. 252-59.) Dr. Richman found, among other things, that Plaintiff had tenderness in various areas and decreased sensation in the left lower extremity. (*Id.* 254-55.) He also agreed with the physical therapy findings as to limited range of motion in the low back (*id.* 255), and noted that Plaintiff has "a preexisting moderate to severe amount of cervical stenosis from radiologic study and the two-level lumbar fusion" well as "old L4 and L5 radiculopathy most likely from his prior low back problem and not related to this claim." (*Id.*) Finally, Dr. Richman assigned Plaintiff a 50% whole person impairment for spine disorders and found that Plaintiff was at maximum medical improvement. (*Id.* 255-56.)

The ALJ also did not state what weight, if any, he actually give Dr. Schwender's opinions, including his opinion about work restrictions. He did state that he chose not to give any significant weight to the whole person impairment rating, but this is ambiguous. It appears that the ALJ rejected this finding completely, but he did not make this clear. This is also error. *Watkins v. Barnhart*, 350 F.3d 1297, 1301 (10th Cir. 2003); *see also* SSR 96-2p, 1996 WL 374188, at *5 (1996) (the ALJ's decision must be sufficiently

specific to make clear to any subsequent reviewer the weight that was given to a medical opinion). These errors are particularly significant in this case because if Dr. Schwender's opinions regarding work restrictions are accepted, Plaintiff would unable to perform his past relevant work per the vocational expert's testimony. (Tr. 31.)

Further, even if an ALJ decides that a treating physician's opinions are not entitled to controlling weight, this does not allow him to reject their opinions outright. *Langley v. Barnhart*, 373 F.3d 1116, 1120 (10th Cir. 2004). Instead, the physician's opinions are "'still entitled to deference and must be weighed using all of the [relevant] factors.'" *Id.* (quotation omitted).[1] "In many cases, a treating source's opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight." SSR 96-2p, 1996 WL 374188, at *4. The ALJ did not appear to give proper deference to the opinions of Dr. Schwender, did not weigh the relevant factors, or consider for the record what lesser weight should be given to his opinions. The ALJ's failure to apply the correct legal standards or to provide the court with a sufficient basis to determine that appropriate legal principles have been followed is also grounds for reversal. *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005).

Finally as to Dr. Schwender, an ALJ must give specific, legitimate reasons for disregarding a treating physician's opinion. *Goatcher v. United States Dep't of Health and Human Servs.*, 52 F.3d 288, 289-90 (10th Cir. 1994). In this case, the ALJ did not give any reasons for rejecting Dr. Schwender's opinions regarding work restrictions or his diagnoses of Plaintiff's impairments. This also requires reversal.

---

[1] These factors are set out in 20 C.F.R. § 404.1527(d).

While the ALJ did state that the records do not support the whole person impairment rating of 49% assessed by Dr. Schwender, an impairment rating is made only for worker's compensation purposes and is not the relevant determination for social security purposes. Even as to that statement, however, the ALJ did not state what records he relied on to find that the rating was unsupported. This is also error, as the ALJ must "discuss 'the significantly probative evidence he rejects'". *Carpenter v. Astrue*, 537 F.3d 1264, 1266 (10th Cir. 2008) (quotation omitted).

I now turn back to the consultative opinion of Dr. Richman, which I find supports the findings of Dr. Schwender. The ALJ gave "no weight" to Dr. Richman's opinion, stating that it "is totally contradicted by Exhibits 1F, 2F, 4F, 5F, 13F, and 15F". (Tr. 15.) The exhibits cited by the ALJ include over 70 pages of records from various medical providers. The ALJ failed to discuss much of those records or state how they allegedly conflict with Dr. Richman's opinion. *See Krauser v. Astrue*, 638 F.3d 1324, 1327 (10th Cir. 2011). Further, as to those portions he did discuss, the ALJ appeared to selectively apply the evidence, picking only findings which supported his conclusion and ignoring the findings which supported a finding of disability. This was error. *Carpenter*, 537 F.3d at 1265.

For example, the ALJ discussed Exhibit 2F in detail, which included a nerve conduction study by Dr. Ross. (Tr. 154-160.)[2] The ALJ stated that the report showed no evidence of active denervation and no evidence of cervical radiculopathy,

---

[2] Exhibit 13F also includes records from Dr. Ross which note the results of the EMG. (Tr. 233-34.)

plexopathy, or peripheral neuropathy, and found that it "does not support the severity of impairment alleged by the claimant." (*Id.* 14.)  However, the same page of Dr. Ross' report relied on by the ALJ also states that "[t]here is electrophysiological evidence of old L4 and L5 radiculopathies . . . that are most likely related to previous lumbar spine surgery." (*Id.* 154.)  The ALJ thus selectively applied the report and improperly substituted his medical judgment for what the report meant as to the severity of Plaintiff's impairments.  *See Winfrey v. Chater*, 92 F.3d 1017, 1021-22 (10th Cir. 1996).

Further, Dr. Ross made other objective findings that support the existence of Plaintiff's impairments as well as the findings of Drs. Schwender and Richman.  He noted, as did Dr. Schwender, that Plaintiff's gait is slow "and antalgic with cane".  (Tr. 159.)  He also found that Plaintiff has trouble standing on his toes and heels, has certain areas of weakness in strength training, and reduced range of motion.  (*Id.*)  His diagnosis was "[n]eck pain, most likely multifactorial, including perhaps a component of cervical spondylosis with some features worrisome for left C6 radiculopathy" and "[l]ow back pain status post multilevel features suggestive of left L5 radiculopathy versus sacroiliac joint syndrome." (*Id.*)  The ALJ blatantly ignored these findings, and his statement that Dr. Ross' findings are contradictory to Dr. Richman's report is thus not supported by substantial evidence.

The majority of other exhibits cited by the ALJ also do not "totally contradict" Dr. Richman's report, as stated by the ALJ.  Exhibit 1F is the report of Pikes Peak Regional Hospital for Plaintiff's treatment on January 23, 2008.  (Tr. 149-53.)  The ALJ stated that the examination was essentially normal, even though Plaintiff was diagnosed

with muscle strain, prescribed pain medication and taken off work for four days.  The

hospital report is certainly not "totally inconsistent" with the later treatment records and

opinions of Drs. Schwender and Richman which are based on more comprehensive

treatment and/or information.

Exhibit 4F consists of records from Centura Centers for Occupational Medicine.

(Tr. 164-98.)  It includes records from Dr. Schwender which are noted above, and

shows that Plaintiff was continued off work due to the diagnosis of lumbar and cervical

spine sprain/strain.  (*Id.* 189.)  These records are certainly not inconsistent with

Dr. Richman's report.  Exhibit 5F consists of physical therapy records which, while

noting that Plaintiff missed appointments, are not "totally" contradictory to Dr. Richman's

report and indeed, are not even from an acceptable medical source.  (*Id.* 199-213.)

Finally, Exhibit 13 includes records from Dr. Ross which, as noted above, are also not

necessarily inconsistent with Dr. Richman's report.  The ALJ erred by summarily citing

to approximately 70 pages of medical records by stating that they are totally

contradictory to Dr. Richman's report when this is not supported by the record.

The only report that appears to contradict Dr. Richman's opinion (and

Dr. Schwender's opinion) to some extent is that of Dr. Lesnak in Exhibit 15F.

Dr. Lesnak agreed with Dr. Schwender that Plaintiff had reached maximum medical

improvement, but concluded that there was no objective evidence to suggest that

Plaintiff qualified for an impairment rating related to his January 2008 work-related

accident or that Plaintiff required any work restrictions related to that accident.  (Tr. 281-

82).  This is obviously contradictory to both Dr. Schwender's and Dr. Richman's

impairment rating.  However, as is clear from the above, Dr. Lesnak was opining only as to how the January 21, 2008 accident impacted Plaintiff.  He was not asked to and did not render an opinion as to whether Plaintiff had work restrictions from his impairments as a whole, unrelated to the injury in January 2008.  In other words, he did not render an opinion relevant to Plaintiff's RFC.  Accordingly, his report does not provide substantial support for the ALJ's RFC finding that Plaintiff can perform light work.

Indeed, the ALJ did not state how he arrived at his RFC assessment that Plaintiff could perform light work, and I have found no support for that in the record.  This also requires a reversal and remand of the case.  *See Conkle v. Astrue*, No. 07-6104, 2008 WL 4726234 (Oct. 28, 2008) (unpublished); *Frantz v. Astrue*, 509 F.3d 1299, 1304 (10th Cir. 2007)

Even though I find that the RFC for light work is not supported by substantial evidence, I also note that the ALJ erred at step four because there was no evidence in the record that Plaintiff could actually perform his past work.  The ALJ improperly relied on the VE's testimony to find that Plaintiff was not precluded from performing his past relevant work as a security officer when the VE did not testify about this issue. (Tr. 5, 16.)  Instead, when the VE was presented with a hypothetical that essentially utilized Dr. Schwender's work restrictions, the VE testified that the individual could not perform any of Plaintiff's past relevant work.  (*Id.* 31.)  The ALJ never followed that up with a hypothetical that matched the RFC he assessed to determine from the VE if Plaintiff could perform his past relevant work as a security worker.  Thus, there was no evidence in the record which supported the ALJ's finding at step four, and reversal and remand is

required.  *See Frantz*, 509 F.3d at 1304 (remand required when "there was no VE testimony, and no evidence of any kind, to establish the . . .demands of Mr. Frantz's past relevant work and thus no evidence to support a finding that Ms. Frantz retains the . . . RFC to work as a general clerk.").  Further, testimony elicited by hypothetical questions that do not relate with precision all of a claimant's impairments cannot constitute substantial evidence to support the Commissioner's decision.  *Gay v. Sullivan*, 986 F.2d 1336, 1340 (10th Cir. 1993).

Finally, although not explicitly raised by the parties, I note other issues which I find should be rectified on remand.  First, to the extent that the ALJ continues to rely on concerns about symptom magnification or Plaintiff not giving full effort as he did in the decision at issue, the ALJ must also consider the fact that the psychological examination of record noted that Plaintiff experiences "a high level of somatization together with an increased level of anxiety. . . :"  (Tr. 318.)  In other words, the pain has both an organic base as recognized by the ALJ and a psychological component which may have caused Plaintiff to unconsciously magnify his pain.  This had to be properly considered.  *See Winfrey v. Chater*, 92 F.3d 1017, 1021 (10th Cir. 1996) (finding that the ALJ erred in not considering "'the possibility that psychological disorders combined with physical problems,'" the diagnosis of a somatoform disorder, and in not treating "plaintiff's somatic preoccupation as a manifestation of his mental impairment or consider how that impairment, along with plaintiff's depression and anxiety, affected his perception of pain") (quotation omitted); *see also Phillips v. Shalala*, No. 93-6257, 1994

-14-

WL 161332, at *4 (10th Cir. 1994) (unpublished); *Teter v. Heckler*, 775 F.2d 1104,

1106–07 (10th Cir. 1985); *O'Donnell v. Barnhart*, 318 F.3d 811, 818 (8th Cir. 2003).[3]

Further, as to Plaintiff's alleged non-compliance with treatment (*see* Tr. 15), the

ALJ must consider the appropriate factors to determine if reliance on this issue is

appropriate.  *See Robinson v. Barnhart*, 366 F.3d 1078, 1083 (10th Cir. 2004); *Ragland

v. Shalala*, 992 F.2d 1056, 1060 (10th Cir. 1993).  For example, the record notes that

Plaintiff completed his biofeedback and physical therapy treatments (Tr. 317), which

appears to be contradictory to the ALJ's finding that Plaintiff canceled every physical

therapy appointment.  (*Id.* 15, 16.)  The ALJ must also conduct a proper pain analysis,

*see Carpenter*, 537 F.3d at 1268, and analyze the impact of Plaintiff's inability to sleep

(Tr. 306, 317-only able to get 1 ½ - 2 ½ hours of sleep each night) and use of a cane on

his ability to work.

III.   CONCLUSION

Based upon the foregoing, I find that the ALJ did not properly weigh the medical

evidence in this case and that the ALJ's RFC assessment is not supported by

substantial evidence.  I also find that the ALJ's decision at step four that Plaintiff can

perform his past relevant work is not supported by substantial evidence.  This case

must be remanded to the Agency for further fact finding on these and other issues

discussed in this Order.  It is therefore

---

[3] "Somatization is 'the conversion of anxiety into a physical disorder or physical symptoms.'" *Teter*, 775 F.2d at 1106 n. 1 (quotation omitted).

ORDERED that this case is **REVERSED AND REMANDED** to the Commissioner

for further fact finding pursuant to sentence four in 42 U.S.C. § 405(g).

Dated August 25, 2011

BY THE COURT:


s/ Wiley Y. Daniel
Wiley Y. Daniel
Chief United States District Judge